# IN THE UNITED STATES DISTRICT COURT
## Middle District of Pennsylvania

Unula B. Abebe
        Plaintiff,

vs

United States Department
of Justice Federal Bureau of
Prisons.     Defendant

case no: __3:18-cv-1972__

# CIVIL COMPLAINT

— Jury Trial Requested ? ▮ —
          YES

*FILED*
*SCRANTON*
*OCT 10 2018*
*PER ___ CLERK*

## PRELIMINARY SUMMARY

This is a Civil Action being brought by Mr. Unula Abebe, *pro se´*, pursuant to the United States Federal Tort Claims Act, Title 28 U.S.C. §1346, against the United States Department of Justice, as the defendant, for using it's *Discretionary* authoritive power to victimize Mr. Unula B. Abebe, multiple time's, by way of Gross Negligence and by administering Intentional Infliction of Emotional Distress in a complete and absolute total Callous Disregard to the well-being of my life, safety and mental health, causing endless days and nights of extreem emotional distress, mental anguish, anxiety, and fear, all of which resulted in and/or caused nightmarish thoughts while being awake, thus, traumatizing in such a significant way that it lead to Headaches/Migrains that I treated with Pain Medicine, medically. The defendants unforgivable tortous behavior occured continuously

day after day for almost two years now. And because of the continuous nature of the defendants **discretionary** acts, Mr. Unula B. Abebe, the Plaintiff, is hereby charging the defendant not just with the appropriate Torts of Gross Negligence and Intentional Infliction of Emotional Distress, but those Torts in multiple counts as Torts of an Continuing Nature. These Tort Claims arose when the defendant **discretionarily** used its authoritive power in April 2017 to house me, against my will and without my consent, in a building that is not only almost 100 years old, but also, and based on my experiance in Construction, has a visually and dangerous unstable structure thats showing obvious signs of an imminent collapse, meaning that the structure of the building is so old and unstable, it is showing signs that it could collapse with me being held by force, inside the building, by the defendant. Such a collapse can result in my death. To compensate me for my Pain and Suffering, and to **punish** the Defendant for its acts i.e. wrongful acts, I am asking for a verdict/order of Monetary relief in the amount of $100,000,000.00$ (100 million dollars) an amount well within the Jurys authority to award. I am asking for a Jury Award for such a considerably low amount ($100 million), low considering

Page 2 of 20

the enormous wealth of the defendant, because I offered to settle my claims out of Court with the defendant at a rate 90% **lower** than the amount I am asking for now; and because there is approx. 300 civilians working at/in the building (300 in an estimated total, but not all are present at the same time) whose live's are in just as much danger as mine's. There are also an estimated 1,200 prisoners in the building as well. The defendant is demonstrating a obvious Callaus disregard to the right of a person to live and enjoy mental health. The defendant, United States Department of Justice, commited all acts stated herein via its Bureau of Prisons. The defendant refused the 90% **lower** settlement offer, on: September 7, 2018. This lawsuit followed, and I chosed to execute my right to represent myself, thus I will be prosecuting this case pro sé. Defendant knew of the dangerously unstable conditions of the building beforehand.

## JURISDICTION

Jurisdiction of this court to hear this case is grounded in Title 28 U.S.C. 1331, and the Federal Tort Claims Act of the United States. Jurisdiction of Penn. Middle Dist. Court is grounded in the fact that the allegations herein occured in Union County P.A.

# ADMINISTRATIVE REMEDY EXHAUSTED

Plaintiff has exhausted admin. remedies required under the Fed. Tort Claims Act, by serving, via Certified Mail-Return Receipt, a Verified Admin Tort Claim upon the defendant. Claim was received on 9-1-18, denied on 9-7-18. Admin Claim number is TRT-NER-2018-07060, served at the defendants Bureau of Prisons office, Certified mail #7015-1730-0000-7823-4859.

# PARTIES

Plaintiff: Mr. Unula B. Abebe, pro sé
　　　　　U.S.P. Lewisburg
　　　　　P.O. Box 1000
　　　　　Lewisburg P.A. 17837   (Union County)

Defendant: U.S. Dept. of Justice Fed. Bureau of Prisons
　　　　　U.S. Custom House 7th flr.
　　　　　2nd and Chestnut Street
　　　　　Philadelphia P.A. 19106
　　　　　Tel: N/A    E-Mail: N/A

Page 4 of 20

# STATEMENT OF CLAIM

In April 2017 and after the Plaintiff demonstrated a constant streak of good behavior (i.e. he stayed out of trouble), a streak that begun in 2016 and continued well into 2017, the defendant via its bureau of Prisons, used, against my will and without my consent, its discretionary authority (discretionary meaning that the defendant acted because it wanted to act and not because it had to) to transfer me from a stable Federal building in Coleman Florida to be housed in a Federal building in Lewisburg Pennsylvania, a building that the defendant knew was dangerously unstable before and at the time I arrived there. I arrived at the dangerously unstable building in Lewisburg on April 17, 2017.

The Lewisburg building has – 11 dormitories –, A-Dorm through J-Dorm and a additional dorm called X-Dorm. About three of said dorm's were empty at the time of my arrival. Thus far, the defendant used it's discretionary power to house me in D, G and X-Dorm at one time or another. I have a certificate in the Construction field known as Carpentry, certified by the State of South Carolina. I also have training in the Construction field known as Brick laying (not certified). Because of my education and experiance, I couldn't help but notice the following things about the building in Lewisburg:

Page 5 of 20.

**Noticed:** The exterior of the building is brick layed and the roof is wooden.

**Knew:** The building had to be very old not only because brickmasonry is now almost a bankrupt profession, but also because prisons are no longer built with wooden roofs. Upon my inquiry, I discovered that construction of the building began in the 1930's, which makes the old building almost 100 years old. That's old if you consider that the 1930's was before the 2nd World War's, Schools were still segregated and I'm not sure if women had a right to vote yet.

**Noticed:** Many area's of the floor, ceiling and interior walls are cracked and crumbling. The floor and ceiling cracks are significant enough that water leaks/seeps through.

**Knew:** Floor and ceiling cracks can be dangerous. When cracks in said area's become so profound that something, even something as insignificant as water, comes through, it should be considered alarming when those type of cracks appear in multi-level buildings. The Lewisburg building is multi-leveled.

**Noticed:** The Lewisburg building had undergone constructional remodeling; major remodeling in some area's, minor in others. The remodeling was unstablizing the building.

**Knew:** Many cell's in the building are about 7 feet wide and 9 feet long. Those sizes are extincted federal regulatory cell size's, for prison cells, especially if two prisoners are two be housed therein for a extended period of time. If my memory serves me well, the new federal standard not only require the cells to be larger but also that the walls be reinforced with steel bars. This meant that in order for the Lewisburg building to meet federal standards, it had to be extensively remodeled. In X-Dorm, the defendant knocked down all the walls except the walls that held to outdoor-view cell windows. The new walls were built so that the cells were atleast 3 feet wider and 3 feet longer. The new walls were solid, reinforced and obviously heavier than the old walls. Heavier is the problem. In D-Dorm, the defendant did not knock down the old walls of the cells, but rather, added a thick layer of sheet metal to cover all the cell walls. Adding that much metal weight, without subtracting any other weight from the structure, made each floor heavier. Heavier is the problem (keep in mind that the building is nearing its 100th anniversary.).

~~Noticed:~~

**Noticed:** G-Dorm is where I witness the **least** bit of added weight, yet the most disasterous signs of an an imminent collapse. The concrete ceiling of G-Dorm's

basement, is the concrete floor of G-Dorms first floor. Likewise, the concrete floor of G-Dorm's first floor is the ceiling of G-Dorm's basement. When such a floor/ceiling is constructed, the concrete of the floor/ceiling is reinforced with steel "I" beams, to add strength to it and to make the structure of the building more stable. In G-Dorm basement, there are two open-air holding cells down there, that prisoners are locked in during Barber-shop time. While I was in one of those cells in July 2017, I noticed that the ceiling right in front of the cells had caved downward a few meters, and that engineers had been there priorly because a additional steel support beam had been added to stop a complete collapse. The crack in the ceiling was so wide that you could stick something in it. If I wanted to discribe the crack, I'd discribe as likened to when someone snap's a number #2 pencil in half yet it doesn't snap completely because the back of the crack is held together by the thin layer of yellow paint. The crack is there, you can see in it, but the back of it is still held together by uncracked concrete. An official employed with the defendant told me that the support beam was added because of all of the extra steel [weight] that

Page 8 of 20

was added to the building. He didnt have to tell me that because, with my education and experience, it was obvious. Had that additional beam not been added at that precise spot, the basement ceiling would have eventually collapse by gravity and the additional weight, and the entire building would look like the letter "V" from a distance, because the center would cave downward. After I saw the crack in the G-Dorm's basement ceiling, I was, later, placed in cell # 113 in X-Dorm (it's the cell all the way at the end of the first floor hall, to the right). I was placed in that cell on approximately March 24, 2018, as my living quarters. The ceiling of that cell had a even worster crack in it than the crack in G-Dorm basement. The only difference was that the crack in the ceiling of my cell did not have a support beam to stop it from caving in on me, and that the crack was wider than I remember the G-Dorm one being. The crack in my cell was located directly above the place where I have to stand every time I receive my breakfast, lunch and dinner, from the defendants staff, through the security slot on the door. Thats atleast three times per

Page 9 of 20

day.

**knew:** I knew that the defendant did not have to put me in that particular cell, there were several other empty cells available on that floor and every other floor in that Dorm. The defendant put me in that cell because it wanted to, not because it had to.

After about a day in the X-Dorm cell # 113, I began to imagine that the ceiling was going to cave in on me while I'm at the door receiving my meal. It became so bad that those thoughts haunted me every time I had to go to the door and immidiately thereafter. It started to stress me out. I began to wonder about things I could do to ensure my safety in the event that I had enough time to dive out of the way. One of the things I thought about was. to crawl under the metal bunk bed in my cell. But when I considered that there was the actual weight of the second and third floor to think about, I figured that the metal bed would do nothing but collapse on me as well. It was hopeless. And what made matter's even worst was that I heard scrubbing noises on my ceiling one night which, from experiance, I understood as the guy in the cell above me was cleaning his floor. But when water

began to drop through the cracks (not the main crack, but other ones) I knew that my ceiling was even more unstable than I originally thought. Surface cracks are not all that alarming, but when water can leak through a crack, its no longer ~~considering a~~ considered a surface crack, its no longer considered harmless. A crack that water can leak through is dangerous because gravity, in time, normally lengthen it.

    I was afraid. There were days that the guy in the cell ~~of~~ above me would obviously be exercising in his cell; running in place, jumping jacks. Of course I could'nt see him but the rythem of his stumping down on the floor put me in the mindframe that those were the type of exercises he was doing. It made me nervous to the point where I would immediately lay down on my bed until it stopped, figuring that the bed was the safest place in my room. Sometimes it occured during the day and sometimes at night. I began to wonder when was the last time this ceiling was evaluated for safety by a engineer. I made a verbal complaint to one of the defendants staff members, officer Snyder, but he said there wasn't any thing he could do about it.

    It was the thoughts that was getting to me mostly. Thoughts of the ceiling falling on me. The pain it would cause, the claustephobia I would suffer if I

did servive but was pinned down by fallen debre. It was nerve recking man. Day and night. There were some nights where I'd be dozing or just laying there and a loud thump/stump noise would come from upstairs causing me to jolt to attention. That physically hurted sometimes. because sometimes it felt like electricity jolted through my body. I started to have headaches/mygrains, which was something I dont normally get. Next to never. I ordered a bottle of Aspirin 325 mg pain pills from the prison pharmacy to treat the pain. I dont consider the pills as being effective because they did nothing to ease the pain.

    And just when I thought things could'nt get any worst, the defendant moved me out of X-Dorm and back to G-Dorm, where I noticed the first big crack in the basement. I stayed in G-Dorm for about 3 months stressing. I found out that the defendant was miscalculating my Classification Custody points in a way that it could house me wrongfully around violent prisoners. I tried to get the defendant to corrects its improper conduct by filing an Administrative Tort Claim, but the defendant dismissed it simply because it had'nt physically injured me. I guess that I had to just shut up, let the defendant wrongfully house me around violent prisoners, wait until one of those

violent guys stab me, hope I survive then ask the defendant again to correct its wrongful calculation.

After about 3 months in G-Dorm, the defendant moved me **back** to X-Dorm, and put me on the 3rd floor in a cell all the way at the back of the dorm. After about two weeks, the defendant moved me into another cell, this one being located two stories above the cell with the cracked ceiling.

The defendant didn't start housing me in these back-dorm-cells until I began reporting its misconduct to the authorities. The defendant begun housing me in cells as far away from dorm traffic as possible. I reported male staff members engaging in sexual misconduct with male prisoners, etc. So I eventually ended up in the cracked ceiling cell because of doing the right thing.

I tried to fight off some of my stress once I got back to X-Dorm by again trying to get the defendant to correct its miscalculation of my classification custody points. This time I tried the Administrative Remedy procedure. I filed a BP-8 complaint against the employee who actually did the miscalculation, i.e. against Case Manager Mr. Hicks. Mr. Hicks is a administrator, but the defendant had a Security personel supervisor respond to my complaint. Security staff are not the proper responders to a

complaint against administrative staff. As such, the security staff member dismissed my complaint claiming that he had found nothing wrong.

The only option left against stress etc., was a route that, on its face, would seem like it would be the first route. The mental health staff.

I have several reasons why I maintain a distance between me and the defendants mental health staff. Since I've been in defendants custody, I've witnessed Psychologist etc. lie on official records, encourage Homosexuality among prisoners even though the mental Health profession consider homosexuality as a mental disorder. I've seen them engage in sexual conduct with prisoners, instigate a prisoner to eat his own feces (which the prisoner eventually did), ignore prisoner's plea's for help etc. One psychologist even tried to convince me that there wasn't any Justice in the world. He even went as far as making it seem like I was thing thinking wrong because I thought that there is Justice. I've witnessed them tell bald face lie's, talk negatively behind people's back, including their patients.

In light of it all, I still requested printed info about how to handle the stress. I tried the things on the paper given to me by the Psychologist in Ms. Brockman in July 2018 but none of it worked.

Page 14 of 20

What made matter's even worster was that the defendant increased the population of prisoner's in the building by transferring more prisoners from all over the United States to be housed in the Lewisburg building. More prisoner's means more weight, and more weight adds more stress to the already unstable structure.

Since after I first arrived at the Lewisburg building, the defendant openned up atleast two more dormitories: B-Dorm and E-Dorm. Now, at this moment, there are approximately 1,200 prisoners in the unstable building and approximately 300 civilians employeed there.

The increase in population of prisoners at the building put not only my life in more danger but the over 300 civilians employed there as well. The defendant could have, if it wanted to, stopped all transfer's to the building like it haulted hiring more staff/civilians, to work there. But it didn't and, as a result of its discrestionary choice, more live's are in danger, including my life, of being a victim of a collapse.

The defendant has also been *physically* forcing two prisoners to share one prison cell. That happened to me last year in May 2017. The practice/policy /custom of forcing two prisoner's to share one cell is centralizing weight to the structure of a dorm building because now instead of a single dorm having to hold approximately

84 prisoners, it now has to support the weight of approximately 168 prisoners. Thats a 50% increase in weight, a increase that the defendant had a choice to avoid, but didnt, and not now that choice is at the expense of my life, safety and mental health.

As I've stated, the information regarding how to manage stress, that I obtained from one of the defendants Psychologist, didn't work. And after I really thought about it I should have known it wouldnt. I likened my situation to a victim of a house fire, you can not treat the victims burn wounds while he's still in the fire, you have to atleast take the victim out of the fire first to start treatment.

I brought my allegations to the defendants attention by filing a Verified Tort Claim at the defendants bureau of Prisons Northeast regional office. I did this in August 2018, after I figured out which routes were appropriate for me to take. The defendant dismissed my allegations simply because I have'nt experianced a physical injury. The defendant's response traumatized me even more.

Approximately 30 days after the defendants dismissal, I'm still being house at the unstable Lewisburg building. My continued housing there is not mandetory on the defendant, but discrestional. It could easily postpone all prison programing, transfer **me** to a Special Housing Unit at another prison, until safer housing arrangements are secured, but the defendant didnt.

Therefore, because of everything I've just stated, I am charging the Defendant with the following Tort Claim civil offenses:

1. Gross Negligence; as a Tort of an continuing nature, one Count of Gross Negligence for each day at the Lewisburg building, that's 532 Counts.

2. Intentional Infliction of Emotional Distress; as a Tort of an continuing nature, one Count of (IIED) for each day I suffered the symptoms of this tort, that's 191 Counts.

Note: The counts are higher if I include the times after I wrote this complaint. The counts stated above however only cover the days up to the signing of this complaint, which is September 30, 2018.

## CLAIM UPON WHICH A RELEIF CAN BE GRANTED

The Defendant, United States Department of Justice, did via its Bureau of Prisons housed me beginning on April 17, 2017 in the U.S. Penitentiary "Lewisburg," in Lewisburg Pennsylvania, continuously for approximately 1'½ years (532 days) using its **discretionatory** authority to do so while **knowing** of the dangerously unstableness of said Prison building **because of** the added metal weight that the defendant added **intentionally** during remodeling. While being aware of the unstableness of the building, the defendant added more weight to the unstable structure by not only increasing the prison population of prisoners, but also physically forcing said prisoners to share prison cells, thus increasing the human weight on the structure from 84 to approx. 168 people (per dorm) and thus making a potential Collapse of the building more likely. Furthermore, the defendant did on March 24th 2018 house me intentionally in a prison cell with a unstable ceiling that the defendant knew was unstable prior to me being housed in the cell.

The defendants discretionary acts were intentional, grossly negligent and performed in a complete and total Callous disregard to the well-being of my life, Safety and Mental health. The Pain & Suffering that the defendants acts caused are: Endless day's and

Page 18 of 20

nights of extreem emotional distress, extreem mental anguish, extreem mental anguish, extreem anxiety, extreem fear, all of which caused me nightmarish thoughts while being awake and traumatizing me in such a devastating way that it lead to severe Headaches/Mygrains that had to be treated with medicine. The Callousness of the defendant's acts are demonstrated by the number of lives in danger: approximately 1,200 prisoners and 300 civilians; and by the disregard for our well-being.

## RELIEF

Punitive Damages: In the amount of $100 million dollars to Punish the defendant for its acts. Thats $100 mil. per day. 532 days for Gross Negligence and 191 days for IIED.

Compensatory Damages: In the amount of $100 million dollars to compensate the Plaintiff for his Pain & Suffering. Thats $100 mil. per day. 191 days total for the pain of headaches/Mygrains, the suffering of extreem emotional distress, mental anguish, anxiety, fear, nightmarish thoughts and trauma.

Attorney Fee's and Costs: In a amount to be determined at the conclusion of this case; but because defendant refused to settle this matter with Plaintiff without court action, and at a time when an attorney wasn't required.

Page 19 of 20

The wrong's alleged are continuing.

I Unula B. Abebe do state under the penalty of Perjury, that the foregoing is true to the best of my knowledge and recollection and is not being presented for any unlawful reason.

/s/ ~~~~~~~

Lewisburg P.A                    Mr. Unula B. Abebe 17319-171
Sept. 30, 2018                   U.S.P. Lewisburg
                                 P.O. Box # 1000
mailed: Oct 2, 2018              Lewisburg P.A. 17837

Page 20 of 20



Inmate Name
Register Number
United States Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

Legal Mail